## Case No. 4,233.

### The EAGLE.

[Olc. 232.] [1]

District Court. S. D. New York. Jan., 1846.

Burr & Benedict, for libellant.
Joshua Coit, for claimant.

BETTS, District Judge. This was an appeal from the decision of a commissioner granting certificate of probable cause for process of attachment against the vessel for recovery of wages, pursuant to the act of congress of July 20, 1790. The schooner arrived at this port on the afternoon of December 24th. and the libellant, cook of the vessel, on the 26th, two days following, presented his affidavit and application to a commissioner, and procured a summons to be served upon the vessel, to show cause why admiralty process should not issue against her therefor. The affidavit stated that the libellant shipped as cook on the 30th day of October last, for a voyage from New York to Baracao, (Cuba;) that he did duty on board until the 25th of December, when he was discharged out of the vessel by the master, leaving a balance of $15 and upwards due him for wages. On

the return day of the summons, and in opposition to the grant of process, the mate was examined, and swore that the cargo was not out of the vessel, that the hatches were first opened that day, (the 27th,) that the cook left the vessel after she was made fast. and all the men went ashore that night, and also the night of the 25th, and did not return to work the day after. He further stated, that a stevedore was employed to unlade the cargo, who commenced on the 27th, and that the libellant had never been discharged from the vessel. One of the seamen testified that he had not been called upon by the officers to assist in unlading the cargo. The libellant called for the shipping articles, and on the production of a copy certified by the custom-house, the name of one man appeared to be erased therefrom. The objections urged before the commissioner, and pressed here as grounds for appeal, are that the period appointed by the act of congress of July 20, 1790, had not expired, so that the seaman had a right to attach the vessel; and that the affidavit of the prosecuting seaman was incompetent evidence upon which to found a certificate. For the libellant it was argued, that the seaman having sworn to facts, authorizing the proceedings to be instituted, it was incumbent on the master to deny these facts under oath; that the discharge of the seaman was to be implied from the employment of stevedores to unlade the cargo; and that an erasure appears upon the shipping articles, which, under the act of 1840, relieves the seaman from the obligation of remaining upon the vessel; that the libellant had accordingly the right to leave at his option, and sue for his wages. As this is the first case which has arisen before me where these questions have been raised, and where a party claims the right to cause an immediate arrest of a vessel on her arrival in port, without proof she was to depart within ten days, I have thought proper to consider them specifically, and present my view of the law arising upon these matters. The competency of the court to entertain an appeal from proceedings before a commissioner, has not been made a question by either party. It is exceedingly doubtful at best, whether the court has any jurisdiction of that kind; but an order to stay proceedings may be made, or the subject may be deemed originally before me; and as all the proofs have been presented and acted upon by both parties, without exception to the appeal, I am disposed to consider and determine the case the same as if the petition had been presented here in the first instance.

The act of July 20, 1790 (section 6), provides, "That as soon as the voyage is ended, and the cargo or ballast be fully discharged at the last port of delivery, every seaman or mariner shall be entitled to the wages which shall be then due according to his contract: and that if such wages shall not be paid within ten days after such discharge, or if

any dispute shall arise between the master and seamen or mariners, touching the said wages, it shall be lawful for the judge of the district where the said ship or vessel shall be, to summon the master of said vessel or ship to appear and show cause why process should not issue against said vessel," &c. The statute determines the time at which wages become due in all cases of hiring, when the precise time is not fixed by the parties, that is, on the full discharge of the cargo at the last port of delivery. The time the wages become payable is the subject of distinct regulations. The seaman has no right to proceed in court, the judge has no authority to entertain his claim until the period so fixed has expired, or other contingencies referred to have occurred. Without the aid of an express stipulation, a seaman cannot, accordingly, sue for wages earned on a foreign voyage, until the full completion of the voyage, by the unlading of the cargo or ballast. If the master or owner wrongfully defers beyond a reasonable time to unload the vessel, such conduct will, in respect to the crew, be tantamount to her discharge. The purpose of the law cannot thus be evaded, and the seamen be defrauded of their wages or hindered in their recovery. The express contract of the libellant in this case, "to discharge the cargo," is no extension of his liability under a general shipping agreement, and the cargo being unlivered without fault of the ship, the voyage, in respect to the crew, is no more ended than it was before the vessel was safely moored in port, unless the mariner can show himself absolved from the restrictions imposed upon him by the act of congress, and in this case, also, embodied in the agreement. A plain, distinct discharge of a seaman by the master or officer in command of the vessel, if he chooses to accept it, terminates the contract, and he is then regarded as having fulfilled it on his part, at least as to the period of service. Such discharge from the ship is alleged by the libellant in this case, and it rests upon him to make out the fact, in order to acquire a standing in court, on his demand. He contends that he has established it in this case, first, directly by his own affidavit, and secondly, by implication or presumption, inasmuch as the men were not required to go to work unloading cargo, and further, that the master has not, by his own oath, denied the allegations sworn to by the libellant.

This affidavit, like a libel, may be sufficient to authorize supporting proofs in the first instance, or to furnish ground for an order against parties omitting to appear or show cause; but upon a contestation in court, neither becomes proof in favor of the action, nor do they when the owner comes in on summons, and gives evidence counterbalancing or conflicting with the affidavit of the petitioner. He then, in common with other litigant parties, is compelled to meet such contradictory evidence, and support his application by legal testimony, on his part. His own oath cannot avail him to accomplish this object. The Crusader [Case No. 3,456]; The Lord Hobart, 2 Dod. 101. Here the evidence was full to show that the contract entered into had not been fulfilled, and accordingly that the seaman had no right to demand his wages and attach the vessel. upon the allegation that the voyage was completed. The mate, who was in command when the libellant went ashore, also testifies that the libellant was not discharged. It would be changing all the principles of evidence to permit a party, by his own ex parte oath, to displace a defence by disinterested witnesses, and entitle himself to an award of an attachment and arrest of the vessel. No fact is established by the proofs which affords reasonable color for an inference that the men were released from the duty of discharging the cargo. One of them testifies that he did not assist in it, and the mate proves that stevedores were employed in unloading, on the 27th, the third day after the vessel arrived, and also says the crew were not at the vessel that day, or the 26th; they all went ashore on Christmas day. It is not even proved that the residue of the crew have been paid by the owners, or their omission to perform the service been assented to or acquiesced in. If the libellant had proved that the master was not interested in the case, the omission of the owners to call him as a witness might be calculated to induce a belief that he had directed or assented to the discharge of the libellant; still, as the owners were not bound to examine him, their not doing so cannot amount to a legal implication that he did discharge the petitioner, nor can the court impute fault to them for not calling in his testimony. It must, moreover. be observed, the master was a competent witness for the libellant, and as he avers that he was discharged by that officer, it was incumbent upon him to confirm that most material allegation. It is to be remarked, that unless such discharge is proved, the fact that the voyage is completed with the unlivery of cargo. does not entitle the seaman to sue for wages "until ten days more have elapsed," unless a dispute arises between the master and mariner, "touching the wages." It is not shown that any such dispute has arisen in this case; the only defensive allegation before the court is, that the contract is not yet fulfilled, and wages are not payable. The contestation of this point does not fall within this provision, for it relates to the proceedings of the seaman after his contract is performed, and his right to wages has become perfected, and the ordinary delay given by the statute, probably to enable the master to collect freights, is taken away when he disputes the right of the seaman to wages at all. I cannot perceive, therefore, that the act of July 20,

1790, removes the impediment or supplies the authority for this proceeding. The libellant, however, further insists that he is liberated from the vessel and the restrictions of the act of 1790, by the provisions of the act of 1840, because of an erasure made upon the shipping articles.

The duplicate articles and list of the crew of the vessel, appear to be a fair copy, with the usual custom-house authentication, and has nothing exceptionable or suspicious on its face, unless it be that the name of one individual inserted originally is erased, with the note "run" against it. Everything else, except the custom-house certificate, is written in one and a uniform hand. The 4th subdivision of the act of 1840 prescribes the consequences of erasures in shipping articles; "they shall be deemed fraudulent alterations, working no change in such papers. unless explained," &c. There is nothing conducing to show that this alteration, if added to the duplicate or found in the original, affects the libellant, or any provision in the contract. It had relation to a man shipped as cook, who abandoned the vessel, and whose place, it is alleged, was supplied by the libellant. But apply the whole effect of the law to this change, and what would it amount to? No obligation or privilege of the crew is touched by it. The line, if restored. would only add the name of some man to the list and remove the word "run," now opposite to it. This would not in any manner lessen or enlarge the stipulations of the contract, or reach the interests of those who signed the shipping articles. The policy of the act is most obvious. It is manifestly to prevent any alterations of shipping articles, which work a change in respect to the rights of seamen. Accordingly the custom-house copy is to be taken as the authentic and true agreement, and variations made in a different handwriting are declared by the law presumptively fraudulent; and accordingly. before they can affect the rights of any one, must be satisfactorily explained to the court. This law has relation to a condition of the papers wholly different from that presented in the present case; to changes made in the duplicate articles after the certificate has been given, and not to changes before the crew list is filed. The 10th subdivision of the section does not accordingly apply to the case. "All interlineations, erasures or writing in a hand different from that in which such duplicates were originally made, shall be deemed fraudulent alterations, working no change in such papers, unless satisfactorily explained in a manner consistent with innocent purposes, and the provisions of law which guard the rights of mariners." Act Cong. July 20, 1840 [supra]. The shipment of the libellant was regularly and legally made, and the duplicate list had nothing to do with that transaction. The engagement was upon the original articles, from which this duplicate is copied. The libellant could not. accordingly, leave the service of the vessel because of any illegality committed in his shipment. The 10th subdivision is to be read in connection with the 8th, and not as operating upon the contract originally entered into in port, before the shipping articles or even the list is deposited in the custom-house. My opinion is, that the libellant has not made out a case in which he is entitled to a certificate of cause for admiralty process, and his application for an attachment against the vessel is denied.